**Affirmed; Opinion Filed July 31, 2018.**



In The
# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-17-01047-CV

### EDDY'S MOTORS, LLC, Appellant
### V.
### SANTANDER CONSUMER USA, INC. D/B/A CHRYSLER CAPITAL, Appellee

**On Appeal from the 101st Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-15-14698**

## MEMORANDUM OPINION

Before Justices Lang-Miers, Evans, and Schenck
Opinion by Justice Evans

Appellant Eddy's Motors, LLC appeals the final judgment in favor of appellee Santander

Consumer USA, Inc. d/b/a Chrysler Capital. We affirm.

### BACKGROUND

Eddy's Motors is a Chrysler automobile dealer located in Kansas and Santander is an

indirect automobile lender located in Texas. The two parties entered into a nonrecourse dealer

retail agreement (the Dealer Agreement) regarding the purchase of retail installment sales

contracts. Eddy's Motors would submit credit applications for its customers to Chrysler Capital

and Chrysler Capital would determine the financing terms, assess the risks, and decide whether to

approve the application. If Chrysler Capital approved the application, it would send Eddy's

Motors the financing terms and agree to purchase the retail installment contract if the dealership entered into a contract with the customer.

Eddy's Motors entered into a retail installment with Tou Hang for the sale of a vehicle. Eddy's Motors sold and assigned the retail installment contract to Chrysler Capital. Hang resided in Iowa at the commencement of the contract. Under the terms of the Dealer Agreement, Eddy's Motors was obligated to "file and/or record all documents necessary to reflect a valid and enforceable first priority security interest in favor of" Chrysler Capital within thirty days of the date of the contract or within lesser time if required by law. Eddy's Motors prepared the title application and gave it to Hang to file. However, neither Hang nor Eddy's Motors filed the title application in Kansas or Iowa to perfect a first priority security interest in favor of Chrysler Capital. Hang later defaulted on the contract. Chrysler Capital demanded that Eddy's Motors repurchase the retail installment contract because it failed to perfect a first priority security interest and Eddy's Motors refused to do so.

Chrysler Capital filed a lawsuit against Eddy's Motors for breach of contract. Following a bench trial, the court decided that Eddy's Motors breached the Dealer Agreement by failing to repurchase Hang's retail installment contract and awarded Chrysler Capital $21,045.12 in damages. Eddy's Motors then filed this appeal.

## ANALYSIS

In three issues, Eddy's Motors asserts that the trial court erred: (1) in finding that Eddy's Motors breached the Dealer Agreement; (2) in deciding that the Dealer Agreement required Eddy's Motors to perfect a first priority security interest; and (3) in awarding Chrysler Capital the full balance due under the contract.

### A. Standard of Review

On appeal from the trial court's judgment in a bench trial, the legal sufficiency of the evidence to support the judgment may be challenged as in any other case. *See Joplin v. Borusheski*, 244 S.W.3d 607, 610 (Tex. App.—Dallas 2008, no pet.). When conducting a legal sufficiency review, we consider all of the evidence in the light most favorable to the trial court's judgment. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit any favorable evidence if a reasonable factfinder could and disregard any contrary evidence unless a reasonable factfinder could not. *Id.*

## B.     First Priority Security Interest

In its second issue, Eddy's Motors argues that the trial court erred in deciding that the Dealer Agreement's obligation that Eddy's Motors "file and/or record all documents necessary to reflect a valid and enforceable first priority security interest" required perfection of a first priority security interest. Specifically, Eddy's Motors argues that because section 9(c) of the Dealer Agreement uses the word "reflect" instead of the word "perfect" that it was only required to do "something less than perfection." Essentially, Eddy's Motors argues that because there were not any rival interests or bankruptcy issues in this case, it was irrelevant to Chrysler Capital whether the security interest merely attached or was perfected. We find this argument unpersuasive.

Our primary concern when construing a contract is to ascertain the true intentions of the parties as expressed in the agreement. *FPL Energy, LLC v. TXU Portfolio Mgmt. Co, L.P.*, 426 S.W.3d 59, 63 (Tex. 2014). We consider the entire writing to harmonize and effectuate all provisions such that none are rendered meaningless. *Id.* Also, we construe contracts from a utilitarian standpoint bearing in mind the particular business activity to be served. *Id.*

Paragraph 9(c) provides:

9.      **Presentment Representations, Warranties and Covenants** Dealer
        hereby represents and warrants as follows:

(c) **Ownership of Contract, Related Automobile and Security Interest**

At the time of the Agreement, Dealer has good and valid title to the Contract and Automobile, has not sold or assigned the Contract and related Automobile to any other Person and, upon delivery of the Assignment, Chrysler Capital will acquire good and valid title free and clear of any security interest, lien or claim of any other Person. For each Contract assigned to Chrysler Capital, *Dealer shall file and/or record all documents necessary to reflect a valid and enforceable first priority security interest in favor of Chrysler Capital, within thirty (30) days of the date of the Contract or within a lesser time period if required by Applicable Law*. Dealer will register leased Automobiles in the appropriate lessor's legal name as designated by Chrysler Capital and provide Chrysler Capital with a completed valid title in the lessor's name. Upon assignment Chrysler Capital will receive a valid enforceable security interest in the Automobile.

(emphasis added). Section 9(c) of the Dealer Agreement clearly requires Eddy's Motors to "file and record" sufficient documentation that Chrysler Capital would have a "valid and enforceable first priority security interest." Filing and recording within a time period required by law in reference to a valid and enforceable first priority security interest are terms and concepts that only pertain to perfection of such security interest in order to be superior to any subsequent claim by anyone who is not a party to the transaction. Eddy's Motors fails to explain any other meaning this language could have that recognizes the plain and ordinary meaning of all of the terms in their context. When all sections of the Dealer Agreement are read in concert, we conclude the contract language to be clear and unambiguous in its intent to provide Chrysler Capital with a perfected security interest. Thus, we conclude that there is legally sufficient evidence to support the trial court's conclusion that the Dealer Agreement required Eddy's Motors to perfect a first priority security interest.

### C. Breach of the Dealer Agreement

In its first issue, Eddy's Motors asserts that the trial court erred in finding that it breached the Dealer Agreement by failing to perfect a first priority security interest. Eddy's Motors specifically argues that a secured party does not need a perfected first priority security interest to non-judicially foreclose on a retail installment contract. Accordingly, Eddy's Motors argues that

because Chrysler Capital could have disposed of the collateral through non-judicial foreclosure, Chrysler Capital was not harmed. We disagree.

The relevant section of the Dealer Agreement provides as follows:

7. **<u>Chargeback</u>**

> **(a) <u>Chargeback Right</u>** Chrysler Capital shall have the right to require Dealer to purchase from Chrysler Capital a Contract that Dealer has originated (the "Chargeback"), and Dealer shall pay to Chrysler Capital the Chargeback Amount with respect to the Contract where: (i) Dealer fails to comply with any material term or condition of this Agreement; (ii) any representation or warranty made by Dealer is false or inaccurate; (iii) the Contract is not valid or the amount of the Contract is incorrect; (iv) Dealer fails to comply with all Applicable Law and the Program Procedures; or (v) *Dealer fails to perfect an enforceable first priority security interest in favor of Chrysler Capital in accordance with Section 9(c).*

(emphasis added). As stated above, the Dealer Agreement clearly required Eddy's Motors to file and record a first priority security interest in favor of Chrysler Capital. We disposed of the first issue by affirming the trial court's finding that Eddy's Motors failed to do so and, therefore, breached the terms of the Dealer Agreement. Therefore, pursuant to the terms of the contract, Chrysler Capital was entitled to require Eddy's Motors to repurchase the retail installment contract.

Eddy's Motors argues that because Chrysler Capital could have non-judicially foreclosed on the vehicle, it was not harmed by Eddy's Motors' failure to perfect a first priority security interest. But that argument implicitly adds a term or condition not present in the text of the agreement. The rules of contract construction, however, expressly limit a court's review of an unambiguous contract to the contract itself. *See URI, Inc. v. Kleberg Cty.,* 543 S.W.3d 755, 757–58 (Tex. 2018) ("[O]bjective, not subjective, intent controls so the focus is on the words the parties chose to memorialize their agreement.") (internal quotation marks and footnote omitted). Eddy's Motors acknowledged as much when it pleaded, "The Dealer Agreement is fully integrated and should not be construed to have terms that the parties could have included, but chose not to." Accordingly, we find this argument unpersuasive. We conclude that there is legally sufficient

evidence to support the trial court's conclusion that Eddy's Motors breached the Dealer Agreement by failing to perfect a first priority security interest.

### D. Damage Award

In its third issue, Eddy's Motors argues that the trial court erred in awarding Chrysler Capital the full balance due under the contract. Specifically, Eddy's Motors complains that the final judgment does not award the vehicle to it or require Chrysler Capital to release its security interest and assign its interest in the retail installment contract back to Eddy's Motors. Thus, Eddy's Motors argues the trial court erred in awarding damages without accounting for the value of the vehicle.

Once again, the terms of the Dealer Agreement control this issue. As stated above, section 7(a) provides that Eddy's Motors shall pay the chargeback amount if it failed to perfect an enforceable first priority security interest. Section 2 of the Dealer Agreement defines "chargeback amount" as the net pay-off balance for the related contract, together with any costs, fees and expenses incurred by Chrysler Capital (including reasonable attorneys' fees) with respect to the contract. At trial, Chrysler Capital provided evidence of the amount due by Eddy's Motors for the chargeback amount of $21,045.12 and the trial court awarded this amount.

Under the terms of the contract, the value of the vehicle does not enter into the valuation of the chargeback amount. Instead, section 7(b) of the Dealer Agreement provides as follows:

> If Chrysler Capital exercises its right of Chargeback, upon payment in full by Dealer to Chrysler Capital of the Chargeback Amount, Chrysler Capital shall assign, or cause the then current holder of the Contract to assign to Dealer, without recourse or representations or warranties of any kind, the Contract, the Automobile, and all rights to payment under the Contract.

The contract terms explicitly provide that upon payment of the chargeback amount by Eddy's Motors, Chrysler Capital is obligated to assign the automobile to Eddy's Motors. Moreover, although Eddy's Motors filed a counterclaim alleging breach of contract regarding two other sales

transactions and for declaratory judgment that Eddy's Motors was not required to perfect a first priority security interest, Eddy's Motors did not include a claim for return of the vehicle Hang purchased. Additionally, the final judgment recites that Eddy's Motors "non-suited its counterclaims for breach of contract and declaratory judgment" and Eddy's Motors does not raise any issue pertaining to its counterclaim. Accordingly, the value of the vehicle is irrelevant to the determination of the chargeback amount even though according to the contract "upon payment in full by" Eddy's Motors Santander is obligated to "assign, or cause the then current holder of the Contract to assign to Dealer, without recourse or representations or warranties of any kind, . . . the Automobile." We conclude the trial court had legally sufficient evidence to award damages totaling $21,045.12 to Chrysler Capital.

## CONCLUSION

On the record of this case, we affirm the trial court's judgment.


/David Evans/
DAVID EVANS
JUSTICE


171047F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

EDDY'S MOTORS, LLC, Appellant

No. 05-17-01047-CV     V.

SANTANDER CONSUMER USA, INC.
D/B/A CHRYSLER CAPITAL, Appellee

On Appeal from the 101st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-15-14698.
Opinion delivered by Justice Evans.
Justices Lang-Miers and Schenck
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee SANTANDER CONSUMER USA, INC. D/B/A CHRYSLER CAPITAL recover its costs of this appeal from appellant EDDY'S MOTORS, LLC.

Judgment entered this 31st day of July, 2018.